J. S72020/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JASON EDWARD EDDINGTON, | : | |
| | : | |
| APPELLANT | : | |
| | : | |
| | : | No. 210 MDA 2016 |

Appeal from the Judgment of Sentence October 20, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0007170-2012
CP-67-CR-0007172-2012
CP-67-CR-0007173-2012
CP-67-CR-0008156-2012

BEFORE: GANTMAN, P.J., DUBOW, J., and STRASSBURGER, J.[*]

MEMORANDUM BY DUBOW, J.:                          **FILED APRIL 26, 2017**

Jason Edward Eddington ("Appellant") appeals from the Judgment of

Sentence entered by the York County Court of Common Pleas after a jury

convicted him of multiple offenses committed as part of a tree trimming and

roofing scam. Appellant's counsel, Christopher D. Moore, Esq., has filed an

**_Anders-McClendon_**[1] Brief and a Petition to Withdraw as Counsel. We

affirm the Judgment of Sentence and grant counsel's Petition to Withdraw.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **_Anders v. California_**, 386 U.S. 738 (1967); **_Commonwealth v._**
**_McClendon_**, 434 A.2d 1185 (Pa. 1981).

The certified record contains the following facts and procedural history. In July 2012 Appellant, using the alias "Frank Winans,"[2] and two co-conspirators, ran a tree trimming and roofing scam under the company name of Above the Rest Tree Service targeting elderly women who appeared to be living alone. Appellant would frequently provide proposals or have discussions with the victims about work he and his co-conspirators had spotted as allegedly needing done. The co-conspirators would frequently do the physical labor, and Appellant would act as the supervisor/administrator, occasionally assisting in the physical work. When the job was allegedly finished, Appellant and his co-conspirators intimidated the victims into paying between $1,000 and $6,000 for low-quality, minimal work, insisting that the check be written out to Frank Winans, the name Appellant gave them as his own. In one case, Appellant gave the victim an estimate of $750 to trim a tree, but then told her they did some additional work on her chimney while they were up there, and presented her with a bill for $4,000. She paid $4,000 out of fear that the large men standing in her kitchen with her would hurt her if she did not pay the full amount. In another case, Appellant would not give an estimate, and when the work was done, he charged the victim $5,000 and one of his co-defendants drove her to the bank to get the payment in cash.

---

[2] Appellant also used the alias "Mark Cummins."

The police arrested Appellant and his co-defendants on July 25, 2012 at a bank when they went to cash another one of their victim's checks.

The Commonwealth filed the first criminal complaint on July 26, 2012, in case CP-67-CR-00007173; the second and third were filed at CP-67-CR-00007170 and 7172 on August 27, 2012; and the fourth at CP-67-CR-00008156 on September 11, 2012. The Commonwealth charged Appellant with 17 offenses, including multiple counts of Theft by Deception, Conspiracy, Home Improvement Fraud, and Deceptive Business Practices.[3] On January 2, 2013, the court consolidated the cases for trial.

Appellant filed numerous counseled[4] and *pro se* pre-trial motions, sometimes serially in quadruplicate despite the consolidation, including Motions to Suppress, Motions for Removal of Counsel, and Rule 600 Motions.[5] As discussed *infra*, the trial court denied Appellant's Rule 600 Motions after a hearing on October 29, 2013. **See** N.T. Hearing, 10/29/13, at 12, 24-25; Order, dated 10/29/13, at 3. Appellant ultimately chose to represent himself at trial, with assistance from stand-by counsel (his third appointed attorney). **See** N.T. Hearing at 13-14; Order at 2-3.

---

[3] It was later determined that at the time of his arrest, Appellant had outstanding bench warrants from two other states, one of which was in the name of "Frank Winans."

[4] The public defenders' office initially represented Appellant.

[5] The court clerk forwarded all documents filed *pro se* to counsel, although many of them are also included in the certified record.

Appellant's jury trial lasted from September 3 to September 5, 2014, at which investigating detectives, tree experts, and the victims, among others, testified on behalf of the Commonwealth. Appellant presented testimony from the arresting and investigating officers, an elderly man who testified that he was married to one of the victims and was himself incapacitated, and a private investigator, who had sent handwriting samples to an expert at the behest of Appellant. The jury found Appellant guilty of four counts of theft by deception, four counts of conspiracy to commit theft by deception, three counts of deceptive business practices, and one count of home improvement fraud.[6,7] The court ordered a pre-sentence investigation ("PSI").

Appellant filed a *pro se* Notice of Appeal on September 12, 2014, which he subsequently withdrew as prematurely filed. On September 19, 2014, the court appointed counsel at Appellant's request. On October 20, 2014, the court noted, *inter alia*, its review of the PSI report and sentenced Appellant to consecutive sentences for an aggregate term of 3 to 16 years'

---

[6] 18 Pa.C.S. § 3922(a)(1); 18 Pa.C.S. § 903(a); 18 Pa.C.S. § 4107(a)(2); 73 P.S. § 517.8(a)(3), respectively.

[7] In addition, during trial, the court found Appellant in contempt of court three times, for which the court sentenced him to two consecutive six-month terms of incarceration and a $1,000 fine. The two terms were to run consecutive to the sentences imposed for his criminal convictions. The contempt convictions are not part of this appeal.

incarceration. The court also ordered restitution as part of the sentences.[8]

On December 1, 2014, upon Appellant's Motion for Reconsideration, the court amended the sentences to an aggregate of 24 to 84 months' incarceration, and to include RRRI eligibility.[9]

Appellant filed a counseled Notice of Appeal on December 4, 2014. Counsel filed a Pa.R.A.P. 1925(b) Statement; Appellant submitted a 17-page *pro se* letter indicating 17 issues he wanted raised in his appeal; the trial court forwarded that letter to counsel.[10] Ultimately, this Court dismissed that appeal for failure to file an appellate brief.

On December 23, 2015, Appellant filed a *pro se* letter seeking reinstatement of his appeal rights *nunc pro tunc*, which the trial court

---

[8] In three of the four cases, the trial court ordered Appellant to pay his *pro rata* share of restitution. In case number 7170, however, the Commonwealth sought $2,000 only from Appellant, solely in connection with count one, Home Improvement Fraud - Misrepresents or Conceals Contractor Identifying Information, 73 P.S. § 517.8(a)(3). **See** N.T. Sentencing, 10/20/14, at 21; Court Commitment, dated 12/15/14, at 4.

[9] The trial court ordered the following terms of incarceration: On CP-67-CR-0007172-2012, 12 months; on CP-67-CR-0007173-2012, a consecutive term of 12 to 24 months; on CP-67-CR-0007170-2012, 12 to 84 months to run concurrent to CP-67-CR-0008156-2012; on CP-67-CR-8156-2012, 12 to 24 months to run concurrent to nos. 7173, 7172, and 7170. **See** Sentence Reconsideration Orders.

[10] When that counsel refused to raise issues Appellant had deemed meritorious, Appellant filed a *pro se* petition in this Court alleging ineffective assistance of appellate counsel. We remanded with instructions, and the trial court held a **Grazier** hearing in which Appellant stated he did not want to proceed *pro se* and would continue with his appellate counsel. Appellate counsel failed to file a brief, however, and this Court dismissed the appeal.

granted on January 8, 2016. The court appointed current counsel, Christopher D. Moore, Esq.

On February 2, 2016, Attorney Moore filed a Notice of Appeal. On March 16, 2016, after the grant of an extension, counsel filed a Pa.R.A.P. 1925(b) Statement. On March 30, 2016, the trial court filed a Pa.R.A.P. 1925(a) Opinion.

In July 2016, Attorney Moore filed a Motion to Withdraw as Counsel and what purported to be an ***Anders-McClendon*** Brief. Appellant filed a response, referencing a letter he had allegedly sent to the trial court and to Attorney Moore that raised "numerous relevant issues for direct appeal." ***See*** Appellant's Response to ***Anders***-***McClendon*** Brief, filed 7/27/16. Appellant did not annex a copy of that letter to his Response.

On September 29, 2016, Appellant filed *pro se* with this Court a document entitled "Motion for Withdrawal of Counsel *Inter Alia* Ineffective Assistance of Counsel," requesting that he be allowed to proceed *pro se* and to file an Amended Pa.R.A.P. 1925(b) Statement and an "Extensive All-inclusive Detailed Appellate Brief, *Pro-se*." Motion for Withdrawal of Counsel *Inter Alia* Ineffective Assistance of Counsel, filed 9/29/16.

On January 18, 2017, we filed a memorandum decision denying both Appellant's Motion and counsel's Motion to Withdraw, and directing counsel

to file a proper ***Anders*** brief.[11]  ***See Commonwealth v. Eddington***, 210

MDA 2016 (Pa. Super. filed Jan. 18, 2017) (finding counsel's Brief deficient).

On March 13, 2017, Counsel filed a Motion to Withdraw and a new ***Anders***

Brief, which are now before us.

The ***Anders*** Brief raises the following 12 issues on Appellant's behalf:

WHETHER THE COURT ABUSED ITS DISCRETION IN THE
FOLLOWING ISSUES:

1.  Judge failing to recuse self as a witness was a neighbor of
the Judge 20 years ago;

2.  Failure to allow handwriting expert to testify as witness;

3.  Judge referring to defendant as noise machine in front of
the jury;

4.  Judge failing to allow defendant to submit his legal
documents as handwriting samples to the jury;

5.  Judge failure to allow defendant to call correctional officer
regarding defendant's handwriting;

6.  Judge failing to instruct jury on contract law;

7.  Judge ordering restitution to witness who testified she was
not owed any money;

8.  Ruling on Rule 600 issue;

9.  Brady violation regarding bank video;

---

[11] Appellant thereafter filed two *pro se* letters requesting that we not grant
counsel any extensions of time to file, and further requesting that, because
he filed a Petition for Writ of *Habeas Corpus* in the federal district court that
we "relinquish jurisdiction immediately" to that court.  ***See*** Appellant's
Letter, dated 2/23/17.

10.   Failure to allow subpoena of Officer Davenport;

11.   Unlawful seizure by police of signature of Frank Winans;

12.   Failure to allow defendant to explain theory of the case in closing argument.

*See Anders* Brief at 4-5 (numbered for clarity); Pa.R.A.P. 1925(b) Statement.

On April 11, 2017, Appellant filed a 95-page Response to counsel's *Anders* Brief ("Response Brief") setting forth extensive and repetitive arguments with respect to the above issues, in addition to directing our attention to his recently-filed federal *habeas corpus* petition. He also challenges the discretionary aspects of his sentence.[12, 13]

## *Anders* Brief

"When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to

---

[12] Appellant also challenges the sentences imposed as a result of his contempt convictions and the trial court's denial of his Motion to Dismiss the civil forfeiture Petition filed by the Commonwealth. *See* Appellant's Response Brief at 59-62. Neither the contempt sentences nor the disposition of the civil forfeiture Petition is part of this appeal. We, thus, decline to address these issues.

[13] Appellant also claims that each of the judges who had been involved at each stage of his case abused their discretion, misapplied the law, made "reckless, biased, prejudicial, malicious, vindictive rulings, decisions, and judgments out of retaliation against this Petitioner [*sic*]." Response Brief at 64. Appellant presents a self-serving, repetitive, irrational, vituperative, nearly incomprehensible argument incorporating each of the other arguments he made on all of the other issues raised. His assertions are unsupported by the record and, at best, meritless.

withdraw." *Commonwealth v. Daniels*, 999 A.2d 590, 593 (Pa. Super. 2010) (citation omitted). In order for counsel to withdraw from an appeal pursuant to *Anders,* our Supreme Court has determined that counsel must meet certain requirements, including:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago,* 978 A.2d 349, 361 (Pa. 2009).

Pursuant to *Commonwealth v. Millisock*, 873 A.2d 748 (Pa. Super. 2005), and its progeny, counsel seeking to withdraw on direct appeal must also meet the following obligations to his or her client:

Counsel also must provide a copy of the *Anders* brief to his client. Attending the brief must be a letter that advises the client of his right to: (1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the *Anders* brief.

*Commonwealth v. Orellana*, 86 A.3d 877, 880 (Pa. Super. 2014) (internal quotation marks and citation omitted). "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to

whether the appeal is, in fact, wholly frivolous." ***Commonwealth v. Goodwin***, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*). Further, "this Court must conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." ***Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote and citation omitted).

In this appeal, we conclude that counsel's ***Anders*** Brief substantially complies with the requirements of ***Santiago***. First, counsel has provided a procedural and factual summary of the case with references to the record. Second, counsel advances relevant portions of the record that arguably support Appellant's claims on appeal. Third, counsel concludes that the instant appeal is wholly frivolous. Lastly, counsel has complied with the requirements set forth in ***Millisock***. ***See*** Letter from Counsel to Appellant, dated 3/13/17. As a result, we proceed to our independent review to ascertain if the appeal is indeed wholly frivolous.

## Issue 1 - Recusal

In his first issue, Appellant avers that the trial court should have recused itself or declared a mistrial because the judge and a witness/victim had been neighbors 22 years ago. We find this issue waived.

In his Pa.R.A.P. 1925(b) Statement, Appellant asserted that it was a *juror,* not a witness, who had been a neighbor of the trial court. ***See*** Pa.R.A.P. 1925(b) Statement, filed 3/16/16. In the ***Anders*** Brief, counsel

reframes the issue as involving a witness/victim in one of the four cases, not a juror. Because Appellant failed to raise this first issue in his 1925(b) Statement, it is waived.

Moreover, even if it were not waived, we would conclude the issue is without merit. Appellate courts presume judges are fair and competent. *In re Lokuta*, 11 A.3d 427, 435 (Pa. 2011).

> A jurist's impartiality is called into question whenever there are factors or circumstances that may reasonably question the jurist's impartiality in the matter. There is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings.

*Id*. at 435-36 (internal quotation marks and citations omitted).

The party requesting recusal has the burden to produce evidence establishing bias, prejudice, or unfairness, which raises a substantial doubt as to the jurist's ability to preside impartially. *Arnold v. Arnold*, 847 A.2d 674, 680 (Pa. Super. 2004).

If the judge determines he or she can be impartial, the judge must then decide "whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary." *Chadwick v. Caulfield*, 834 A.2d 562, 571 (Pa. Super. 2003) (citations omitted).

In the instant case, the following relevant exchange occurred just before the start of trial:

> **Prosecutor**: There's one minor issue that has been brought to my attention this morning. It's on case 7170-2012. The victim

in that case is a woman named Ann Sheffer. She is here today. I actually brought her into the courtroom because she is my first witness this morning anyway. Ms. Sheffer informed me today, it actually hasn't come up before but she wanted –

**Court**: I know Ms. Sheffer.

**Prosecutor**: Yes. She indicated to me that you were her neighbor like 20-some years ago.

**Court**: Yeah. It's a long time ago. Any objection, sir, to this witness testifying?

**Appellant**: Actually, yes, sir. I mean, I don't think it's right that people should know each other involved in a trial.

**Court**: I have not lived with her – or not lived next to her for probably 22 years.

**Appellant**: Yes, sir.

**Court**: And I think I might have run into her once with a hi. She told me – I could be wrong, Red Lion or something like that, but that I remember something in passing running into her. You know, I don't know what to do then under the circumstances. Any suggestions?

**Prosecutor**: Your Honor, given that it was more than 20 years ago, I mean, I am for one satisfied the Court can be fair and impartial.

**Court**: Yeah, I mean, I can.

**Prosecutor**: It's not the Court that makes the findings of fact in any event. I don't see any reason why she wouldn't be treated like any of the other vicitms.

**Court**: Yeah. So what is your position?

**Appellant**: Well, like I said, I have spoken my position. I don't think it's right [or] proper, but then again, I mean, I've been waiting 25 months to get to trial. I can't see not being – I can't see being denied my right to trial now at this point after it's taken so long to get here.

> **Court**: No, I know. But you're the person who is having the objection.
>
> **Appellant**: Yes, sir, and I don' [*sic*] think it is right at all.
>
> **Court**: Okay. But what is the remedy you are seeking? Great. You don't think it's right –
>
> **Appellant**: What remedy is there: What options id [*sic*] there for a remedy sir?
>
> **Court**: Have we started testimony in that case?
>
> **Prosecutor**: In that case?
>
> **Court**: Well, never mind. The jury's impaneled. I am going to deny any motion that you might have which wasn't actually made with specificity. I can be fair and impartial and I don't think that someone living next door to someone 22 years ago would give the appearance of impropriety. So that is it.
>
> **Appellant**: Very well.

Notes of Testimony ("N.T.") Trial, 9/4/14, at 237-39.

Although Appellant expressed his discomfort with the judge's prior acquaintance with the victim/witness, any objection he had was to the witness testifying. He did not request the judge's recusal, nor did he "produce evidence establishing bias, prejudice[,] or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." ***Arnold***, ***supra***, at 680. Moreover, we agree with the trial court that a neighborly acquaintanceship 22 years in the past does not support a conclusion that there is an appearance of impropriety. Appellant's first issue is, thus, without merit.

## Issue 2 – Handwriting Expert

In his second issue, Appellant claims that the trial court abused its discretion by failing to allow his handwriting expert to testify regarding the signature of "Frank Winans" on the back of a business card. Appellant had requested and was granted leave to hire a handwriting expert. The expert provided an opinion to Appellant's then-counsel, and counsel informed the Commonwealth nearly a year before trial that it would not be calling that individual at trial. N.T. Hearing, 10/23/13, at 5.

We review the trial court's evidentiary rulings for an abuse of discretion. *Commonwealth v. Tyack*, 128 A.3d 254, 257 (Pa. Super. 2015) (citation omitted).

"In determining the admissibility of evidence, the trial court must decide whether the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect." *Commonwealth v. Hawk*, 709 A.2d 373, 376 (Pa. 1998).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. Evidence that merely *advances an inference* of a material fact may be admissible, even where the inference to be drawn stems only from human experience. Moreover, even in the case of expert testimony, to be relevant, evidence need not be conclusive.

*Id*., (internal quotation marks, brackets, and citations omitted).

In Pennsylvania criminal cases, the accused is entitled to relief for an erroneous ruling unless the court finds beyond a reasonable doubt that the

error is harmless.  Pa.R.E. 103 Comment (citing *Commonwealth v. Story*, 383 A.2d 155 (Pa. 1978)).

In the instant case, Appellant had subpoenaed the Commonwealth's handwriting expert, John Gencavage.  Mr. Gencavage had looked at a contract that Appellant had admitted to the investigating officer was in his handwriting, and stated that the handwriting on the contract matched Appellant's.  Appellant's own handwriting expert, Gus Lesovich, had looked at a signature of "Frank Winans" on the back of a business card and on a proposal, but reached inconclusive results[14] and did not compile a report.

The following relevant exchange took place during trial:

**Appellant**:  And that's my defense.  That was not me that signed the name Frank Winans.

**Court**:  But you admit that that proposal was written by you?

**Appellant**:  The job description itself was.

**Court**:  Okay.

**Appellant**:  But I didn't know for who.

**Court**:  Why don't you stipulate that that's not Frank Winan's signature?

**Prosecutor**:  I'm sorry?  On the contract?

**Court**:  Yeah.

---

[14] ***See*** N.T., 9/3/14, at 85 (where stand-by defense counsel explains to the court that he told Appellant that "the handwriting [Appellant] wants to question, … it's script and somewhat hurried handwriting, it's different than all the samples I have that are more careful [*sic*] presented[.]").

**Prosecutor**:  You mean the signature here?

**Court**:  Yeah.

**Prosecutor**:  It's signed Frank Winans.

**Court**:  I understand.  Apparently that name can be used by anyone who deems it appropriate including the Defendant.

**Prosecutor**:  Well, I mean the Defendant – we've already seen a driver's license for Frank Winans with the Defendant's picture on it.

**Court**:  All right.  So we have – do you want to call both handwriting experts?

**Appellant**:  If at all possible.

**Court**:  Have they been subpoenaed?

**Stand-by Defense Counsel**:  Your Honor, Mr. Gencavage is under subpoena although he wasn't on the second witness list that I got from [Appellant].  He is still under subpoena.  Mr. Lesovich I've talked to.  He was the one that had the inconclusive report.  I've talked to the Court about if we are going to pay him funds to come down and say he had an inconclusive report.  I know in my past conversations with [Prosecutor], I imagine we could stipulate that he analyzed it and was not able to be conclusive.  I don't think his findings are in dispute.  I know [Prosecutor] –

**Court**:  I think they might be in dispute by your client, although I don't know why he would call an expert when he is in dispute with the expert.  Also, I don't know, is the handwriting expert paid for by the Commonwealth of Pennsylvania?

**Stand-by Defense Counsel**:  Yes.

**Court**:  All right. You can't call a second expert with an inconclusive report.  Sir, think this through, why would you call an expert who says I can't tell.  Okay.  But that's just as likely that it is your handwriting is just as likely that it isn't.  So that does not hurt the Commonwealth at all because if it didn't appear to be your handwriting he'd say that, but he is saying I

- 16 -

can't tell which is the same thing as saying legally maybe. Okay. So you can't call the second one. You can call the first one. Other than that expert and the medical testimony which we are going to have at 1:30, are there any other defenses you have to this case?

**Appellant**: Yes, sir. Actually that's the reason I wanted the handwriting expert –

**Court**: I don't need to know the reason. I just need you to answer my question.

N.T., 9/4/14, at 314-319.

In its Rule 1925(a) Opinion, the trial court stated: "As this expert's opinion would not have helped the jury understand the evidence or determine a fact in issue, we find no error in not permitting Appellant to call this expert." Trial Ct. Op. at 4-5.

We note that evidence need not be conclusive to be relevant. However, under the facts of this case, we agree that the expert's testimony — about his inability to conclude that the handwriting matched or did not match other writings by "Frank Winans" — would not have assisted the jury in determining a fact in issue.

Moreover, in light of the plethora of evidence supporting Appellant's identification as the individual using the name "Frank Winans" during the commission of the crimes, *see* N.T. at 69, 73, 103, 149, 201, 217, 333, and 368; and Appellant's own acknowledgement that he had been using the name "Frank Winans" as an alias since 2000, *see* N.T. at 120, we conclude that Appellant was not prejudiced by the court's ruling. Accordingly, the trial

court did not abuse its discretion in declining Appellant's request to present Mr. Lesovich's testimony.

**Issue 3 – "Noise Machine"**

Appellant's third issue raises a claim that the judge referred to Appellant as a "noise machine" before excusing the jury for a break. Our review of the transcript reveals that the judge did not refer to Appellant as a "noise machine." Rather, upon a request from counsel to approach the bench to discuss potential exhibits, the court said to the jury: "Rather than have you listen to my noise machine any longer, I'm going to send you back. You can take a break for 10 minutes." N.T., 9/5/14, at 431-32. As the trial court noted in its Rule 1925(a) Opinion, the reference to "noise machine" referred to the background noise which the trial judge regularly turns on during side bars. Appellant's mischaracterization is, at best, disingenuous. This issue is meritless.

**Issue 4 – Prison handwriting samples**

In his fourth issue, Appellant challenges the trial court's refusal to allow Appellant to submit into evidence letters that he had written from prison and filed with the court so the jury could compare his handwriting to that which is contained on the various contracts and proposals and the one business card submitted into evidence. The letters written from prison were "voluminous" and included, as the prosecutor noted, "a series of accusations about what's going on in his case." N.T. at 551.

As noted above, we review evidentiary rulings for an abuse of discretion. *Tyack*, *supra*. Further, we note that evidence must be relevant and admitted to prove a fact in issue.

The "proponent [of evidence] must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). When there is a question of authenticity, a specimen used for comparison must be authenticated. Pa.R.E. 901(b)(3). With respect to handwriting evidence, it may be authenticated by "a nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation." Pa.R.E. 901(b)(2).

At trial, in response to Appellant's request made immediately after Appellant waived his right to testify, the following exchange occurred:

> **Court**: The rule allows a lay witness to discuss the issue of whether or not writings are and the same. That witness cannot have prepared his or her knowledge for purposes of the trial. They have to be familiar with your writing.
>
> In this case, we have no witness that has analyzed them, or is a lay witness who is familiar with your writing. To send those items out to the jury would allow them to engage in speculation to consider things that are beyond the scope of their expertise and I'm not going [to] allow it.
> . . .
> Do you have any lay witnesses that are familiar with your writing?
>
> **Appellant**: I was going to say the CO at the jail. He's very familiar with my handwriting because he – I give him stuff all the time, request slips, and everything.
>
> **Court**: Okay. What's your response to that, Counsel?

**Appellant**: He's very familiar with my handwriting.

**Prosecutor**: Your Honor, it's – I'm also concerned that the documents that he's trying to get in – obviously I'm very familiar with Mr. Eddington's voluminous correspondence, and usually it's a series of – a series of accusations about what's going on in his case, and sometimes he's ready to go to trial and sometimes he's not.

I think another hurdle we have to cross here is I seriously doubt he can present any handwriting sample that's appropriate to go back to the jury.

**Court**: I think that we would need testimony from a lay witness who is familiar with your handwriting which familiarity came before these charges:

**Appellant**: Before these charges:

**Court**: Before these charges. So someone who is familiar with your handwriting before July 25, 2012.

**Appellant**: Okay.

**Court**: Do you have any witnesses?

**Appellant**: No, sir . . . .

* * * *

N.T., 9/5/14, at 550-52.

In its Pa.R.A.P. 1925(a) Opinion, the court stated, "[t]here was no witness testimony presented at trial in relation to these letters to help the jury determine a fact at issue. Appellant did not have a witness who was familiar with his handwriting, and familiar with his handwriting prior to the charges filed in these cases, therefore, the trial judge properly denied this request." Trial Ct. Op. at 5. *See also* N.T. at 550-52.

- 20 -

We agree, and conclude that the trial court properly denied Appellant's request to admit his post-arrest writings. Accordingly, this issue has no merit.

**Issues 5 and 10 – Correctional Officer Davenport**

In issues 5 and 10, Appellant avers the trial court erred in "fail[ing] to allow Appellant to call a correctional officer regarding Appellant's handwriting." ***Anders*** Brief at 4.

As noted above, "it appears Appellant did not have a witness ready to testify but engaged in a dialogue discussing who could be a potential witness." Trial Ct. Op. at 6. Our review indicates that Appellant had not subpoenaed the CO and, in fact, had not made any request of the court to allow him to call the CO. Thus, it is a mischaracterization to state the court "failed to allow" him to call a witness whom Appellant never actually asked to call. These issues are without merit.

**Issue 6 – Contract law**

Appellant next challenges the trial court's denial of his request to enter into evidence a document explaining what a civil contract is.

The following exchange occurred at trial:

**Appellant**: … Also, I have that I'd like to enter as evidence it is identity of party. It just basically states the law that where one contracts with an individual face-to-face, and intends to contract with that individual before him, the contract, if any, is made with that particular individual regardless of the name he assumed from the transaction.

**Court**: Okay.

- 21 -

**Appellant**: That's marked as Exhibit 40.

* * *

**Court**: . . . I'm not going to give them an instruction on contract law under these situations. In many situations, you've been charged as a conspirator because of the various descriptions of the individuals who, on specific dates, actually physically dealt with the victims. There has been information that you were at each and every one of the job sites. So I'm going to deny that motion as well.

In its Pa.R.A.P. 1925 Opinion, the trial court observed:

The trial judge is the authority on determining what law applies in any individual case. Here, the trial judge determined that whatever contract law provision Appellant requested was inapplicable and possibly in contradiction to the criminal conspiracy law that would be charged[.]

Trial Ct. Op., at 6.

In light of the fact that contract law was not relevant to the crimes with which Appellant was charged, the court did not err in denying Appellant's request to admit a document explaining contract law. ***See Hawk***, ***supra*** at 376 (stating "[e]vidence is relevant if it logically tends to establish a material fact in the case"). ***See also*** Theft by Deception, 18 Pa.C.S. § 3922; Deceptive Business Practices, 18 Pa.C.S. § 4107; Home Improvement Fraud, 73. P.S. § 517.8 (defining elements of crimes charged).

In addition, to the extent Appellant asserts that the trial court refused to give a jury instruction pertaining to contract law, we conclude that argument has no merit.

Our standard of review applicable to challenges to jury instructions is well settled: we must review the jury charge as a whole to determine if it is fair and complete. *See Commonwealth v. Hawkins*, 701 A.2d 492, 511 (Pa. 1997). A trial court has wide discretion in phrasing its jury instructions, and "can choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." *Id.*, at 511. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law. *See id.*

In light of the fact that the crimes charged pertained to criminal offenses and there was no evidence admitted regarding contract law, the court properly denied Appellant's request for a contract law instruction.

## Issue 7 - Restitution

In his next issue, Appellant avers that the trial court erred in ordering that he pay $2,000 in restitution as part of his sentence in CP-67-CR-0007170-2012 ("Case 7170").[15]

We note initially that the *Anders* Brief states this issue as trial court error because of the "Judge ordering restitution to witness who testified she was not owed any money." *See Anders* Brief at 29. Counsel does not indicate where in the transcript the victim so testified. Our thorough reading

---

[15] Case 7170 involved the victim, Ann Sheffer, giving Appellant a check for $6,000 for minimal and incomplete work. The victim closed the checking account, however, just as Appellant entered the bank to cash the check. He was arrested at the bank. The check was never cashed.

of the transcript indicates that there was no testimony from the victim in Case 7170 that "she was not owed any money." On that basis alone, we could find the issue to be meritless. We nonetheless address the issue as part of our independent review.

We are guided by the following principles in addressing challenges pertaining to restitution:

> An appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing. The determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary.

***Commonwealth v. Holmes***, __ A.3d __, 2017 WL 337093, at \*6 (Pa. Super. filed. Jan. 4, 2017). "The illegality of a sentence of restitution is not a waivable issue[.]" ***Commonwealth v. Reed***, 543 A.2d 587, 589 (Pa. Super. 1988) (citations omitted).

Authority to order restitution as part of a sentence is conferred by Section 1106 of the Crimes Code, which provides:

### § 1106. Restitution for injuries or property

**(a) General rule**.-Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

18 Pa.C.S. § 1106.

"[T]he primary purpose of restitution is rehabilitation of the offender by impressing upon him that his criminal conduct caused the victim's loss or personal injury and that it is his responsibility to repair the loss or injury as far as possible." *Commonwealth v. Runion*, 662 A.2d 617, 618 (Pa. 1995) (superseded by statute on other grounds). Thus, recompense to the victim is secondary, as "[a] sentence imposing restitution is not an award of damages." *Commonwealth v. Wright*, 722 A.2d 157, 160 (Pa. Super. 1998).

When imposed as a sentence, the injury to property or person for which restitution is ordered must directly result from the crime. *See* 18 Pa.C.S. § 1106(a); *Commonwealth. v. Harner*, 617 A.2d 702, 704 (Pa. 1992). To determine the correct amount of restitution, a "but-for" test is used—damages which occur as a result of the crime are those which should not have occurred but for the defendant's criminal conduct. *Commonwealth v. Oree*, 911 A.2d 169, 174 (Pa. Super. 2006).

In the instant case, the victim testified that Appellant gave her a detailed, itemized invoice indicating that he and his co-conspirators had made repairs to her sun roof and chimney. A roof and chimney expert, who had examined Appellant's chimney, testified that Appellant and his co-conspirators had not done most of the work that they had listed on the bill. Further, the expert opined that the materials that were used in the little bit of work they did do were diluted or otherwise subpar. This resulted in

cracks and staining on the victim's house, and a sun roof that continued to leak despite Appellant's assurance that they had fixed it. ***See*** N.T. Trial, 9/4/14, at 214-65, 285-309.

Based on the testimony of the roofing expert, the victim did suffer some damages around her chimney and on her house as a direct result of Appellant's and the co-conspirator's criminal conduct. Accordingly, we conclude that the trial court's order of restitution is supported by the record. Appellant is entitled to no relief on this issue.

### Issue 8 – Rule 600

The next issue challenges the trial court's dismissal of his Pa.R.Crim.P. 600 Motion. We review the denial of a Rule 600 Motion guided by the following principles:

> In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the

protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Ramos*, 936 A.2d 1097, 1100–01 (Pa. Super. 2007) (internal citations, brackets, and ellipses omitted).

Rule 600 provides that trial shall commence within 365 days after the filing of the criminal complaint.  Pa.R.Crim.P. 600(A)(2)(a).  This is referred to as the "mechanical run date."  Rule 600 provides, however, that certain time periods may be excluded, which then results in an "adjusted run date."  *See Ramos*, *supra* at 1102.  "[P]eriods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence.  Any other periods of delay shall be excluded from the computation."  Pa.R.Crim.P. 600(C)(1).

Our review of the record indicates that Appellant filed numerous *pro se* and counseled motions for, among other things, discovery, suppression,

removal of his attorneys, and Rule 600 violations. Following is a portion of the procedural history that supports the trial court's denial of Appellant's Rule 600 motion.

Appellant filed his first *pro se* Rule 600 Motion on January 22, 2013, seeking release on nominal bail, 181 days following the filing of the first criminal complaint against him. The court clerk sent the Motion to Appellant's counsel. On February 6, 2013, counsel filed a Motion to Suppress. The trial court scheduled a status hearing for March 15, 2013.

On February 8, 2013, Appellant filed numerous *pro se* motions including, but not limited to, a "Notice of Ineffective Counsel," another Motion to Suppress, a Motion for Return of Property, and a "Motion to Dismiss for Violation of Right to Speedy Trial." On February 28, 2013, Appellant's counsel moved for a status hearing, and on March 6, 2013, the court rescheduled the Rule 600 Motion hearing to April 15, 2013.

At a hearing on March 25, 2013, the trial court granted Appellant's request and removed Appellant's attorney. On April 1, 2013, the trial court appointed new counsel. A hearing commenced on April 15, 2013, and continued on April 24, 2013; however, the court did not deal with the Rule 600 Motions at that time.

Notwithstanding the appointment of counsel, Appellant continued to send *pro se* motions and correspondence to the court. On June 13, 2013, Appellant filed another "Notice of Ineffective Counsel" to remove his new

counsel. On June 24, 2013, he filed, *inter alia*, a "Notice to All Parties Concerned" that he had terminated his counsel, and a new *pro se* Rule 600 Motion, seeking release on nominal bail because 180 days had passed since the fourth criminal complaint had been filed on September 11, 2012. On July 2, 2013, and July 10, 2013, he refiled the same Rule 600 Motion, among other things, and the court scheduled a status hearing and pre-trial conference for July 31, 2013.

At the hearing on July 31, 2013, Appellant's counsel noted that Appellant had never filed a nominal bail petition, and noted that during the "substantial amount of time he's been in jail," there had been continuances in each of his cases to address his various motions, including the suppression motion. N.T. Hearing, 7/31/13, at 3. Counsel stated he did not want to file a Rule 600 motion for nominal bail, which would "eat more time until we got the order back," particularly when there was a suppression motion pending that would have caused a Rule 600 motion to be dismissed. *Id*. at 3, 8. The court then denied Appellant's request to remove counsel, noted counsel's promise to review the Rule 600 time, instructed Appellant not to submit any more *pro se* filings, and listed the case for the August 2013 trial term.

On August 16, 2013, Appellant filed a *pro se* Application to terminate his counsel's representation, and requested stand-by counsel. He also requested that the court "except" his Rule 600 motions. Letter annexed the

Motion and Application for Stand-by Counsel, filed 8/16/13. He refiled the same documents on September 5, 2013, and September 13, 2013. On September 20, 2013, Appellant filed a "Re-Amended" Rule 600 Motion. The court scheduled a hearing for October 17, 2013, on Appellant's Motion to Remove Counsel of Record and several *pro se* motions. On October 8, 2013, Appellant filed another letter and Application for Stand-By Counsel. The trial court rescheduled the hearing for October 23, 2013.

On October 23, 2013, the court granted Appellant's Motion to represent himself, but continued the hearing to October 29, 2013, to deal with Appellant's remaining motions, including the Rule 600 Motion. Appellant's counsel indicated that he had reviewed the cases, and all of the continuances resulting from Appellant's motions, and had determined that of 422 days Appellant had been in jail, 316 days were excludable. **See** N.T. Hearing, 10/23/13, at 7. The court instructed Appellant to submit his own calculation.

At a hearing on Appellant's Rule 600 Motion, the trial court ruled as follows:

> I'm marking up what I'm going to attach to the record as Court Exhibit 1, which are my findings of the number of days excludable thus far due to the filing of defense motions and defense actions that have caused delay. We're 262 days excluded to this point. The adjusted Rule 600 date is May 16, 2014.
>
> Commonwealth has demonstrated due diligence in bringing this matter forward. It's been on the trial list twice. It's been taken off due to the pendency of defense motions. I find no indication

that the Commonwealth has been dilatory in any regard. If they had pushed forward and tried to force it to trial and these motions for ineffective counsel were on the cusp and pending, it would have been setting it up for reversible error.

So despite defense assertion that they were ready to go every single day, actually they weren't. They were certainly entitled to file these motions, and the Court's not suggesting that the filing of these motions was inappropriate, but filing of motions has consequences, and this is one of these consequences. The Rule 600 time was running on the defense for at least 262 days. The defense motion under Rule 600 is denied.

N.T. Hearing, 10/29/13, at 12-13.

Later, during the same hearing the court stated:

[B]oth times when the case was removed from the trial list, his two pending defense motions (one was his ineffective assistance of counsel motion, the other time there was a pending omnibus motion that required rescheduling after the trial period), in both instances it was not due to Commonwealth lack of diligence. It was to give the Defendant an opportunity to present legal issues that could potentially have been either dispositive of his case or dispositive of his right to have effective counsel. For the Commonwealth to push those matters to trial at that point would have potentially violated significant constitutional rights of the Defendant and resulted in the cases being thrown out.

So for those reasons, and incorporating the reasoning previously stated in the Rule 600 issue, the Court denies the Defendant's motion for dismissal under speedy trial provisions.

*Id*. at 24-25.

The voluminous record in this case is rife with prolix and redundant motions and correspondence that Appellant filed. As noted above, many of the motions required hearings and proceedings that necessarily delayed trial. *See* Trial Court Exh. 1 (listing dates of filed motions, length of continuances, and reasons for continuances, concluding that 262 days were

- 31 -

excluded due to Appellant's motions, and setting adjusted run date for nominal bail as November 21, 2013, and the mechanical run date for trial as May 16, 2014). Based on our detailed review of the record, we conclude that the trial court did not abuse its discretion in denying Appellant's Rule 600 Motion.

## Issue 9 – Brady Violation

In his next issue, Appellant claims that a *Brady* violation occurred because he was not given a copy of the surveillance video from one of the banks at which he cashed or attempted to cash one of the checks.

In *Brady v. Maryland,* 373 U.S. 83 (1963), the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment... ." *Id*. at 87.

We are guided by the following principles when considering an allegation that a *Brady* violation has occurred.

> Under *Brady* and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature. To establish a *Brady* violation, an appellant must prove three elements: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. The burden rests with the appellant to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution. . . .
>
> The duty to disclose is limited to information in the possession of the government bringing the prosecution, and the duty **does**

extend to exculpatory evidence in the files of police agencies of the government bringing the prosecution. **Brady** is not violated when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from other sources. **Brady** sets forth a limited duty, not a general rule of discovery for criminal cases.

**Commonwealth v. Ovalles**, 144 A.3d 957, 965 (Pa. Super. 2016).

Detective Snell testified about Appellant cashing a check at Sovereign Bank that he had received from one of his victims.

> **Appellant**: …[D]id you get any type of surveillance video of this action?
>
> **Detective**: I attempted to get the surveillance video. I had gotten the information from the manager at the corporate headquarters at the Sovereign Bank located in New Jersey. In order to get the surveillance video I put in a request on letterhead. I faxed that request in. I never got the video from Sovereign Bank, for some reason Sovereign Bank has problems, you know, sending surveillance video because I have had bank robberies before where I haven't gotten videos like I asked. So to answer your question, … I put in a request for it. I never got the video.

N.T. Trial, 9/4/14, at 368–70.

Our review of the record indicates that the video evidence was never available to the Commonwealth. Since it did not exist, it was not available to either party; since it did not exist, it was impossible to ascertain if it was exculpatory.[16] We conclude no *Brady* violation occurred and Appellant's issue is, thus, without merit.

---

[16] There is no evidence that Appellant or his counsel attempted to obtain a copy of the video with a subpoena.

## Issue 11 – Suppression Motion

In his next issue, Appellant avers that the trial court abused its discretion in denying his Motion to Suppress documents signed by "Frank Winans." **See Anders** Brief at 36.[17]  At the suppression hearing, he argued that the warrant was not issued or executed appropriately.  We conclude this issue has no merit.

This Court's well-settled standard of review of a denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus,

---

[17] We note that the **Anders** Brief provides no citation to the record and no law relevant to suppression.  We independently review the issue as required pursuant to **Commonwealth v. Flowers**, 113 A.3d 1246, 1249 (Pa. Super. 2015).  Our review indicates that Appellant filed an omnibus pretrial motion generally asserting a "fruit of the poisonous tree" argument.  Although Appellant did not specifically seek to suppress documents signed by "Frank Winans," the nature of his omnibus pretrial suppression motion was such that it encompassed the documents, *inter alia*, obtained from Appellant's vehicle, including documents signed by Appellant as "Frank Winans."

the conclusions of law of the courts below are subject to [ ] plenary review.

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotation marks omitted).

Pa.R.Crim.P. 203(C) provides as follows:

(C) Immediately prior to submitting a search warrant application and affidavit to an issuing authority using advanced communication technology, the affiant must personally communicate with the issuing authority by any device which, at a minimum, allows for simultaneous audio-visual communication. During the communication, the issuing authority shall verify the identity of the affiant, and orally administer an oath to the affiant.

Pa.R.Crim.P. 203(C).

The exclusionary rule provides that "[e]vidence discovered as a result of a search that violates the fundamental constitutional guarantees of Article I, Section 8 will be suppressed." ***Commonwealth v. Gordon***, 683 A.2d 253, 256 (Pa. 1996).

[I]t is important to distinguish between a violation of the fundamental constitutional guarantees of Article I, Section 8 and mere technical noncompliance with the Pennsylvania Rules of Criminal Procedure. We have, in fact, specifically "reject[ed] the automatic application of the exclusionary rule to suppress evidence seized pursuant to a search which in some way violates the Pennsylvania Rules of Criminal Procedure relating to the issuance and execution of search warrants." ***Commonwealth v. Gerald Mason***, [ ]490 A.2d 421, 423 ([Pa.] 1985). Indeed, it is only when violations of the Rules "assume constitutional dimensions and/or substantially prejudice the accused" that suppression may be necessary. ***Id***. at 425.

***Commonwealth v. Ruey***, 892 A.2d 802, 808 (Pa. 2006).

In the instant case, Detective David Bixler of the West Manchester Township police department testified at the suppression hearing regarding his obtaining a search warrant for Appellant's vehicle from Magistrate District Judge ("MDJ") Dwayne A. Dubs. He stated that, on July 25, 2012, he spoke with MDJ Dubs, and faxed an application and affidavit of probable cause to him around 9:00 p.m. MDJ Dubs testified that he administered the oath to Detective Bixler when he spoke to him over the phone regarding the affidavit of probable cause. MDJ Dubs also testified regarding the transmission report from his fax machine that was admitted into evidence showing that he had faxed the warrant back to Detective Bixler at 9:49 p.m. He testified that he had written 10:00 p.m. on the 48-hour warrant itself to round up to the next quarter hour, as was his habit with search warrants, but as relayed during their phone call, he had wanted Detective Bixler to search the vehicle immediately. *See* N.T., 4/24/12, at 6-7. Detective Bixler executed the search warrant at 9:55 p.m. Police seized cash, documents, and other items from the vehicle.

Appellant's counsel argued that the officers did not have a warrant when they went into the vehicle at 9:55 p.m. on July 25th, and the MDJ had violated Pa.R.Crim.P. 203 because he had not visually clarified that he was speaking to Detective Bixler.

On July 19, 2013, the suppression court denied Appellant's motion, providing the following analysis, in relevant part:

Initially, we note that the Supreme Court of Pennsylvania has rejected the automatic application of the exclusionary rule to suppress evidence seized pursuant to a search which in some way violates the Pennsylvania Rules of Criminal Procedure relating to the issuance and execution of search warrants. Such a drastic remedy – the automatic exclusion of evidence obtained during a search that is found to have technically violated the Rules of Criminal Procedure – is unwarranted and is not supported by decisions of the appellate courts. **Commonwealth v. Mason**, 490 A.2d 421 (Pa. 1985).

The Supreme Court of Pennsylvania has not fashioned an automatic rule of exclusion of evidence for violations of the Rules of Criminal Procedure generally, nor for Rule 203 specifically. Indeed, it has been made clear that the execution of a search warrant which violates these Rules will not automatically require the exclusion of evidence so obtained.

* * *

The Defendant argues that the purpose of Rule 203(C) is to ensure that a person who is requesting the warrant prove who they say they are. The Commonwealth of Pennsylvania has long had a requirement that the affiant for a warrant appear personally to confirm his or her identity with the court. Rule 203(c) permits the use of technology for the request and issuance of warrants with the specific requirement that the affiant be made known by audio and visual confirmation in lieu of the person having to appear personally before the magistrate.

We note that this technical defect does not "assume a constitutional dimension nor does it substantially prejudice the accused." **See** [ ] **Mason**, **supra** at [ ] 425. Accordingly, the technical defect should not result in the suppression of evidence and we determine that the evidence obtained from the Defendant's vehicle was not obtained via an illegal search and seizure. Therefore, the Defendant's Omnibus Pretrial Motion to Suppress Evidence is hereby **DENIED** and **REFUSED**.

Order, dated 7/19/13, at 5-7.

We agree with the suppression court's analysis, which is supported by

the facts of the case and relevant legal authority. Accordingly, we conclude

Appellant's challenge to the court's denial of his suppression motion is without merit.

## Issue 12 – Appellant's Closing Argument

In his last issue, Appellant avers that the trial court abused its discretion by denying him the right to explain his theory of the case in his closing argument. **See Anders** Brief at 37 (citing N.T., 9/5/14, at 567).

The trial court summarized the issue as follows:

> During Appellant's closing argument, the prosecutor and trial judge interrupted [ ] Appellant [at] various times to object and caution Appellant about not arguing facts not admitted into evidence, not to comment on the trial judge's legal rulings, and not to testify during closing. The trial judge found Appellant in contempt three times during his closing. We do not find that [Appellant] was deprived [of] the opportunity to explain his theory of the case, but was unable to do so while comporting with the rules of evidence. Therefore, we find this claim meritless.

Trial Ct. Op., dated 3/30/16, at 9. **See Commonwealth v. Abu–Jamal**, 555 A.2d 846, 852 (Pa. 1989) (*pro se* litigant "is subject to the same rules of procedure as is a counseled defendant"); **Jones v. Rudenstein**, 585 A.2d 520, 522 (Pa. Super. 1991) (noting that a *pro se* litigant is not absolved of complying with procedural rules and substantive law, citing **Faretta v. California**, 422 U.S. 806, 834 n.46 (1975)).

Our review of the complete trial transcript indicates that Appellant was not deprived of the opportunity to present his theory of the case. It is apparent from his cross-examination of the Commonwealth's witnesses, the direct examination of his own witnesses, and his closing argument that he

was able to convey his theory of defense to the jury. During closing arguments, he quite clearly informed the jury that he was just an employee of Above the Rest Tree Service, and at the time of the crimes, he was not able to do physical labor that some of the victims had testified they had seen him doing. *See* N.T. at 567-68. The court properly forbid Appellant from arguing facts not in evidence and from testifying during his closing argument. This issue, thus, lacks merit.

## Discretionary Aspects of Sentence

In his Response Brief, Appellant avers that the trial court vindictively imposed sentences that are harsh and excessive. *See* Response Brief at 58. He asserts that the court did not properly consider his prior record score, his educational background, or his "Cronic [*sic*] Illnesses and Medical Needs." *Id*. He concludes that the court erred in ordering the sentences to run consecutively. Each of these claims challenges the discretionary aspects of his sentences.

A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. *Commonwealth v. Hunter*, 768 A.2d 1136, 1144 (Pa. Super. 2001). Prior to reaching the merits of a discretionary sentencing issue:

> We conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and

(4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006) (citations omitted).

In the instant case, Appellant filed a timely Post-Sentence Motion and Notice of Appeal. Appellant did not include in his Response Brief a separate Pa.R.A.P. 2119(f) Statement. We may conclude this is a fatal defect because a substantial question is not obvious from Appellant's Response Brief. ***See Commonwealth v. Kneller***, 999 A.2d 608, 614 (Pa. Super. 2010) (holding that this Court may overlook an appellant's failure to comply with Rule 2119(f) where the Commonwealth fails to object to the omission *and* a substantial question is obvious from the appellant's brief.). We nonetheless provide the following analysis.

When considering whether an Appellant has presented a substantial question, we note:

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (citations and quotation omitted).

Where the trial court has the benefit of a PSI, our Supreme Court has held that "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (discussing *Commonwealth v. Devers*, 546 A.2d 12, 18-19 (Pa. 1988)).

An argument that the sentencing court failed to consider mitigating factors in favor of a lesser sentence does not present a substantial question appropriate for our review. *Commonwealth v. Hanson*, 856 A.2d 1254, 1257-58 (Pa. Super. 2004). *See also Commonwealth v. Griffin*, 804 A.2d 1, 9 (Pa. Super. 2002) (citing *Commonwealth v. Williams*, 562 A.2d 1385, 1388 (Pa. Super. 1989) (*en banc*) (an allegation that the sentencing court did not adequately consider various factors is, in effect, a request that this court substitute its judgment for that of the lower court in fashioning a defendant's sentence)).

Finally, an appellant's challenge to the consecutive nature of his sentence raises a substantial question only where the defendant articulated particular reasons why consecutive sentences were unreasonable. *See Commonwealth v. Dodge*, 77 A.3d 1263, 1273 (Pa. Super. 2013).

Appellant generally asserts that he "was sentenced contrary to the fundamental norms" but does not provide a colorable argument to support his bald assertion. Response Brief at 59 (unnecessary capitalization

omitted). Moreover, he does not point to any specific provision of the Sentencing Code that the sentencing court ostensibly violated. His bald assertions that the court failed to consider various mitigating factors and that it should have imposed concurrent rather than consecutive sentences do not raise a substantial question. *See Commonwealth v. Trippett*, 932 A.2d 188, 201-03 (Pa. Super. 2007) (bald allegations of excessiveness insufficient to permit discretionary review).

Because we conclude that Appellant has failed to raise a substantial question as to the appropriateness of his sentence, we will not address the merits of Appellant's sentencing claim.

## Conclusion

In addition to considering the issues raised on Appellant's behalf in the *Anders* Brief and those asserted in Appellant's Response Brief, we have conducted an independent review of the record, as required by *Commonwealth v. Flowers*, 113 A.3d 1246, 1249 (Pa. Super. 2015). We conclude that there are no preserved, non-frivolous issues that can be raised on appeal. We, thus, concur with counsel that this appeal is wholly frivolous, and allow him to withdraw.[18]

Petition of Christopher Moore, Esq., to withdraw granted. Judgment of Sentence affirmed.

---

[18] Because Appellant has not filed a praecipe with this Court to discontinue this Appeal, his *pro se* request to "relinquish jurisdiction to the United States District Court" is denied. *See* Letter, dated 2/23/17, at (unpaginated) 2.

President Judge Gantman joins the memorandum.

Judge Strassburger concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/2017